## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| US LED, Ltd., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-CV-0783 |
| | § | |
| NU POWER ASSOCIATES, INC., | § | |
| RSI POWER, INC., and GRE NORTH | § | |
| AMERICA, INC. | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

In this products liability suit, Defendant GRE North America, Inc. ("GRE-NA")

has filed a Motion for Summary Judgment [Doc. # 61] ("Motion") seeking dismissal

from the case.[1]   Plaintiff US LED, Ltd. ("US LED") asserts that GRE-NA is liable

under vicarious liability theories flowing from its relationship with

---

[1]     Plaintiff responded to the Motion, GRE-NA replied, and Plaintiff filed a surreply. *See*
Plaintiff's Response to Defendant GRE North America's Motion for Summary
Judgment and Brief in Support Thereof [Doc. # 64] ("Response"); Defendant GRE
North America Inc.'s Reply to Plaintiff's Response to Defendant's Motion for
Summary Judgment and Brief in Support Thereof [Doc. # 65] ("Reply"); Plaintiff's
Surreply to Defendant GRE North America's Motion for Summary Judgment and
Brief in Support Thereof [Doc. # 66] ("Surreply").  After Plaintiff filed the Surreply,
Defendant filed a motion to strike the surreply or, in the alternative, file a sur-
response.  *See* Defendant GRE North America, Inc.'s Motion to Strike Plaintiff's
Surreply to Defendant GRE North America's Motion for Summary Judgment and
Brief in Support Thereof and, in the Alternative, Motion [for] Leave to File
Surresponse [Doc. # 67].  Plaintiff has responded to the Motion to Strike.  *See*
Plaintiff's Response to GRE North America, Inc.'s Motion to Strike [Doc. # 68].

Defendant Nu Power Associates, Inc. ("Nu Power"), and also is directly liable for certain claims.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that GRE-NA's Motion should be **granted in part** and **denied in part**.

## I.      BACKGROUND

The parties disagree sharply about GRE-NA's role in the transaction at issue. Plaintiff US LED argues that GRE-NA, along with GRE Hong Kong, was the manufacturer of the product in question, whereas GRE-NA argues that it served only as a sales representative. Viewed in the light most favorable to Plaintiff, the relevant facts are as follows:

Plaintiff US LED produces light-emitting diode ("LED") illumination for sign applications.  In 2006, Plaintiff purchased approximately 5,000 power supply units, which later were discovered to be faulty, from Defendant Nu Power.[2]  The units' "potting material," that is, insulating material inside the ballast of the transformers, was ultimately determined to be the source of the problem.[3]

The faulty power supply units were manufactured by Golden Regent

---

[2]     Affidavit of Ronald E. Farmer (Exhibit A to Response) ("Farmer Affidavit"), at 1, ¶ 2; Deposition of Richard Araujo (Exhibit B to Response) ("Araujo Deposition"), at 201.

[3]     Farmer Affidavit, at 1, ¶ 2; Araujo Deposition, at 201.  Replacement units were furnished by Nu Power, but were also faulty.  Farmer Affidavit, at 1, ¶ 2; Araujo Deposition, at 63-64.  *See also* Fifth Amended Complaint [Doc. # 43], at 3.

Electronics Industrial, Inc., in Hong Kong ("GRE Hong Kong"), an entity formed under the laws of the People's Republic of China.  GRE Hong Kong was initially named as a defendant in this suit, but was never successfully served with process.

GRE-NA describes itself as the "contracted sales representative" or the "North American representative" of GRE Hong Kong.[4]  GRE-NA insists that it is not the manufacturer of the power supply units in question, that it manufactures nothing, and that, in the transaction at issue, it merely facilitated the transaction between its client, GRE Hong Kong, and GRE Hong Kong's customer, Nu Power.[5]  Douglas Gruenenfelder, Business Development Manager for GRE-NA, states:

> The manufacturer [GRE Hong Kong] forwarded Nu Power's email to GRE North America, as GRE North America was its liaison in North America, with a request to make contact with Nu Power and find out Nu Power's specific power supply needs, which GRE North America did. The specifications required by Nu Power for the custom manufactured power units were transmitted to the manufacturer in China.  Thereafter, Nu Power placed purchase orders directly to the manufacturer, the manufacturer directly shipped the custom manufactured power units to Nu Power, and Nu Power wired its payment directly to Hong Kong. GRE North American neither received (nor accepted) the custom manufactured units, nor received (or accepted) payment for those units

---

[4]     Motion, at 3.  *See* Declaration of Douglas Gruenenfelder (Exhibit B to Motion) ("Gruenenfelder Declaration"), at 1; Deposition of Douglas Gruenenfelder (Exhibit A to Motion) ("Gruenenfelder Deposition"), at 50.

[5]     Gruenenfelder Deposition (Exhibit C to Response), at 53 (GRE-NA does not have any manufacturing capabilities).  Gruenenfelder also maintains that "GRE North America" does not stand for "Golden Regent Electronics North America," and that he does not consider such an assumption to be logical.  *Id.* at 50.

from Nu Power.[6]

GRE-NA claims it was unaware of US LED and its relationship with Nu Power, and had no direct dealings or contact with US LED or any Nu Power customers.[7]  GRE-NA further argues that Nu Power never acted as its agent, that GRE-NA had no authority to bind Nu Power, and that GRE-NA had no right of control over Nu Power or its customers.[8]

Plaintiff paints a different picture of GRE-NA's role, claiming that GRE-NA "designed and manufactured the transformers," or power supply units.[9]  Plaintiff cites Gruenenfelder's expert report, produced in connection with this lawsuit, which states:

> I have been employed as a business development manager with G.R.E. North America, Inc., ***a manufacturer of power supply products*** and power related products, since January of 2001. . . . I have specific knowledge concerning the product which is the subject of a lawsuit brought by US LED against Nu Power because ***my company actually designed and built the units which are the subject of the lawsuit.***[10]

---

[6]     Gruenenfelder Declaration, at 1.

[7]     *Id.* at 2.

[8]     Motion, at 4.

[9]     Response, at 3.  Gruenenfelder explained at his deposition that a "transformer" is a component, whereas a "power supply unit" is an assembled unit, and that the 5,000 units at issue in this suit are power supply units.  Gruenenfelder Deposition (Exhibit C to Response), at 83.  However, the parties sometimes refer to the units as transformers.

[10]    Nu Power Lawsuit Preliminary Expert Report (undated), Douglas A. Gruenenfelder
(continued...)

Gruenenfelder also states that he has "specific knowledge concerning the design, manufacture, and testing of the power supply units which are the subject of this lawsuit."[11] Emails between GRE-NA and Nu Power demonstrate that GRE-NA's role included shipping sample units, providing testing data, furnishing cost comparisons, scheduling customer tours of GRE Hong Kong's facilities, and handling requests regarding design (including potting material, which was the cause of the subject units' failure).[12] This evidence supports Plaintiff's position that GRE-NA's role was broader

---

[10]   (...continued)
       (Exhibit D to Response) ("Gruenenfelder Expert Report"), at 1 (emphasis added).

[11]   *Id.* Gruenenfelder's curriculum vitae describes his job duties with GRE-NA as: "Responsible for all Sales, Marketing, Engineering and Logistics involved in the sale of electromagnetic components, power supplies as well as OEM and ODM complete product assemblies from GRE's headquarters in Hong Kong and four China factories into North and South America." *Id.* at fourth unnumbered page (available on Court's ECF system at Appendix to Response [Doc. # 64], page 47 of 71).

[12]   *See* Email from R. Araujo (Nu Power) to D. Gruenenfelder (GRE-NA), dated Feb. 23, 2005 (Exhibit H to Response) (email, which was also sent to Obence Ma and others at Golden Regent Electronics, requests that Gruenenfelder provide Araujo with pricing, sample leadtime, cost comparisons, a "plan . . .for the UL submittals," test results regarding thermal performance data, and "engineering electrical test data . . . on the initial prototypes as per specs"; that he ensure that certain sample units "ship out this Friday"; that he respond to a design request regarding "the possibility of making a 277VAC input option on the 50W/60W series of models, like our 120W"; and that he "provide status as to the type of potting on which you have final[i]zed"); Email from D. Gruenenfelder (GRE-NA) to R. Araujo (Nu Power), dated Jan. 11, 2005 (Exhibit G-1 to Response) (discussing itinerary for Araujo's visit to China to tour GRE Hong Kong's facilities and discuss Nu Power's products); Email from R. Araujo (Nu Power) to T. Hall (GRE-NA), dated Nov. 2, 2004 (Exhibit G-3 to Response) (detailed discussion of the design and parts of the power supply unit, in the
                                                                              (continued...)

than mere "sales representative."

Plaintiff also argues that GRE Hong Kong and GRE-NA held themselves out as the same company, and that GRE-NA "essentially operat[es] as an internal department of GRE Hong Kong."[13]  As evidence, Plaintiff presents a printout from GRE Hong Kong's website, which refers to its "Hong Kong headquarters," lists "GRE North America" as a regional sales office for GRE Hong Kong, and refers to the "establishment of GRE, North America" in 1999 as one of its "Historic Highlights."[14] Plaintiff also provides a printout from the website of the Gwinnett County (Georgia) Chamber of Commerce, on which GRE-NA is identified as an "Electronics Manufacturer" and GRE Hong Kong's website (www.goldenregent.com) is listed as GRE-NA's own.[15] One email from Gruenenfelder to Nu Power's Araujo discusses the manufacture of Nu Power's power supply units, referring to "our Sai Heung plant"

---

[12]      (...continued)
          context of Nu Power's request for a quote, and stating "yes, *we* do have excellent potting capabilities") (emphasis added).

[13]      Response, at 3.

[14]      GRE Hong Kong Website Except (Exhibit E to Response), at first and third unnumbered pages (available on Court's ECF system at Appendix to Response [Doc. # 64], pages 48 & 50 of 71).

[15]      Gwinnett County (Georgia) Chamber of Commerce Website Excerpt (Exhibit F to Response).

and "our Dong Guang plant."[16]  Gruenenfelder stated at deposition that GRE-NA sells all of GRE Hong Kong's products and does not, and has never, sold any other company's products.[17]

Plaintiff further points out that the same people head both GRE Hong Kong and GRE-NA.  Obence Ma of Hong Kong, who is the director of GRE Hong Kong, is also President and an officer of GRE-NA.[18]  Daniel Ma, a relative of Obence Ma, is an officer of both entities.[19]  GRE-NA is owned by another Hong Kong entity, of which Obence Ma is also an officer.[20]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

[16]   Email from D. Gruenenfelder (GRE-NA) to R. Araujo (Nu Power), dated January 11, 2005 (Exhibit G-1 to Response).  Another email refers to "Frank at the Hong Kong office," but only one page is provided and the author and recipient are not identified. *See* Exhibit G-4 to Response.

[17]   Gruenenfelder Deposition (Exhibit C to Response), at 38, 50-51, 73-74. Gruenenfelder further stated that GRE-NA is "certainly allowed to and capable of" selling products for other companies.  *Id*. at 38.

[18]   *Id*. at 14-16, 80.

[19]   *Id.* at 80.

[20]   *Id*. at 59-60.  Gruenenfelder testified that he could not remember the name of the Hong Kong company that owns GRE-NA.  He recalled that the company's name is "Golden something, Hong Kong" but "not Golden Regent Electronics Industrial." *Id*. at 60.

fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[21]   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[23]   The moving party, however, need not negate the elements of the non-movant's case.[24]   The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"[25]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material

---

[21]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[22]     FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[23]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[24]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[25]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

fact for trial.[26]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[28]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[29]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[30]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[31]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine

---

[26]    *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[27]    *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

[28]    *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[29]    *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[30]    *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[31]    *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

issue concerning every essential component of its case."[32]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[33]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[34]  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[35]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[36]

---

[32]     *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[33]     *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[34]     *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[35]     *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[36]     *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

III.   **ANALYSIS**

Plaintiff's live pleading, the Fifth Amended Complaint, contains nine claims, six of which allege only vicarious liability for GRE-NA, and three of which allege both direct and vicarious liability.[37]   For the reasons discussed below, summary judgment is granted for Defendant on the issue of vicarious liability, and therefore six claims against GRE-NA are dismissed.[38]   On the causes of action for which Plaintiff also alleges direct liability of GRE-NA—breach of express warranty, breach of implied warranty, and negligence— summary judgment is denied.

A.   **Vicarious Liability**

Plaintiff's Fifth Amended Complaint pleads two grounds to hold GRE-NA vicariously liable for the acts of Nu Power: agency and ratification.[39]   GRE-NA's Motion argues extensively, with citations to authority, that neither ground applies.[40] Plaintiff's briefing wholly fails to address these arguments, to cite any case law, or to

---

[37]   Plaintiff US LED's Fifth Amended Complaint [Doc. # 43] asserts claims for (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty; (4) failure of essential purpose, failure of consideration, failure to meet standards, and breach; (5) violation of DTPA; (6) fraudulent misrepresentation; (7) fraud by nondisclosure; (8) negligent misrepresentation; and, (9) negligence.

[38]   The six counts alleging only vicarious liability against GRE-NA are Counts 1, 4, 5, 6, 7, & 8.

[39]   Fifth Amended Complaint, at 5.

[40]   Motion, at 5-9.

otherwise argue under these doctrines.  Instead, Plaintiff argues, under its "Vicarious Liability" heading, that GRE-NA was actually the manufacturer of the faulty units, either because it was heavily involved in the design and manufacture of the product or because GRE-NA and GRE Hong Kong held themselves out as the same company.[41]  Plaintiff cites no case law in support of its argument.  These arguments that GRE-NA actually is the manufacturer of the units go to the direct liability claims discussed *infra* in Section III.B of this Memorandum, not to GRE-NA's alleged vicarious liability for the acts of Nu Power.

Plaintiff thus appears to have abandoned its arguments regarding vicarious liability.  To the extent Plaintiff has not abandoned them, they are entirely unavailing.  Summary judgment is granted for GRE-NA on Counts 1, 4, 5, 6, 7, and 8.[42]

### B.   Direct Liability Claims

Plaintiff alleges that GRE-NA is directly liable on three claims: (1) breach of express warranty, (2) breach of implied warranty, and (3) negligence.[43]

---

[41]   Response, at 10-11.

[42]   *See Little*, 37 F.3d at 1075 ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) (emphasis original).

[43]   GRE-NA's Reply argues generally that all of Plaintiff's direct liability claims fail
(continued...)

### 1.   Breach of express warranty

Plaintiff US LED alleges that Defendant GRE-NA is directly liable for breach of an express warranty because GRE-NA made false representations regarding the quality and characteristics of the power supply units. The elements for breach of express warranty are:

(1)   an express affirmation of fact or promise by the seller relating to the goods;

(2)   that such affirmation of fact or promise became a part of the basis of the bargain;

(3)   that the plaintiff relied upon said affirmation of fact or promise;

(4)   that the goods failed to comply with the affirmations of fact or promise;

(5)   that the plaintiff was injured by such failure of the product to comply with the express warranty; and,

---

[43]   (...continued)
because "Plaintiff has failed to adduce any evidence that the units were defective, as required by Texas law." Reply, at 5. GRE-NA further argues that Plaintiff cannot support claims of breach of warranty or negligence, because it has not alleged that the entire shipment breached warranty or that all units failed. *Id.* (suggesting that Plaintiff's proper claim might have been a claim for delivery of a non-conforming batch of goods pursuant to TEX. BUS. & COM. CODE § 2.608). GRE-NA cites no authority for its apparent argument that Plaintiff is required to establish that all of the 5,000 units failed.

In any event, the evidence submitted with Plaintiff's Response demonstrates that there is, at a minimum, a genuine fact question as to whether the product was defective. *See, e.g.*, Farmer Affidavit (Exhibit A to Response), at 1, ¶ 2 (the units purchased by US LED were "clearly faulty" and failed because of the potting material; replacement units also failed); Araujo Deposition (Exhibit B to Response), at 64 (original units purchased by US LED failed, and replacement units also failed).

(6)    that such failure was the proximate cause of plaintiff's injury.[44]

Defendant GRE-NA argues that no express warranty was created because GRE-NA made no affirmation, statement, or representation to Plaintiff US LED. However, Plaintiff argues that an express warranty was created by a sample or model unit that GRE-NA participated in delivering.[45]   Plaintiff cites to an email from Nu Power to GRE-NA which requests that multiple samples, including samples of the 60 watt unit in question, be sent from GRE-NA to Nu Power.[46]   Plaintiff also presents evidence that, before the purchase, Nu Power provided US LED with samples.[47]   This evidence creates a genuine question of material fact that GRE-NA made an express warranty under TEX. BUS. & COM. CODE § 2.313(a)(3).

The Court recognizes that GRE-NA had no contract with Plaintiff.  Texas,

---

[44]    *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App. – Fort Worth 1987, writ ref'd n.r.e.) (citing *Gen'l Supply & Equip. Co., Inc. v. Phillips*, 490 S.W.2d 913, 917 (Tex. Civ. App. – Tyler 1972, writ ref'd n.r.e.); TEX. BUS. & COM. CODE ANN. § 2.313 (Vernon 1968)).

[45]    Response, at 19.  *See* TEX. BUS. & COM. CODE § 2.313(a)(3) ("Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model").

[46]    Email from R. Araujo (Nu Power) to D. Gruenenfelder (GRE-NA), dated Feb. 23, 2005 (Exhibit H to Response).

[47]    Araujo Deposition (Exhibit B to Response), at 22.  Plaintiff's argument cites to other portions of the Araujo Deposition, but the cited pages were not provided to the Court. Response, at 19 (citing Araujo Deposition, at 108-110).

however, does not require privity of contract for a claim of breach of express warranty.  Longstanding Texas authority provides that "privity of contract is not required where the manufacturer furnishes samples to a middleman with the knowledge that these samples are likely to be submitted to the ultimate buyer so as to induce a sale of the product."[48]   Although GRE-NA argues that it is not the manufacturer of the units in question, and therefore is completely outside the distribution chain, Plaintiff's evidence is sufficient to demonstrate a genuine fact question as to GRE-NA's status.[49]   Summary judgment on Plaintiff's breach of express warranty claim is denied.

### 2.   Breach of implied warranty

Plaintiff brings claims against GRE-NA for breach of two types of implied warranty: implied warranty of merchantability and implied warranty of fitness.[50]

---

[48]   *Indust-Ri-Chem Lab., Inc. v. Par-Pak Co., Inc*., 602 S.W.2d 282, 287 (Tex. Civ. App. – Dallas 1980, no writ).  *See PPG Indus., Inc. v. JMG/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.2d 79, 88 (Tex. 2004) (Texas Supreme Court has held that privity of contract is not required for implied warranty claims, and multiple Texas appellate courts have applied the same rule to express warranty claims).

[49]   Defendant's argument that it is not the manufacturer flies in the face of some evidence in the record.  *See supra* Section I (citing, *e.g.*, Gruenenfelder Expert Report, at 1 (Gruenenfelder identifies GRE-NA as "a manufacturer or power supply products" and says that GRE-NA "actually designed and built" the power supply units in question); Email from R. Araujo (Nu Power) to T. Hall (GRE-NA), dated Nov. 2, 2004 (Exhibit G-3 to Response) (discussing in detail the design and parts of the power supply unit)).

[50]   As with express warranty claims, Texas does not require privity of contract for
(continued...)

**Implied Warranty of Merchantability.**  Texas statute provides for an implied warranty of merchantability, stating that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[51]  GRE-NA unconvincingly argues that it does not qualify as a "merchant with respect to goods of that kind," as required by the statutory language.  "Merchant" is defined as follows:

> A person is a 'merchant' if he (1) deals in goods of the kind, or (2) by his occupation holds himself out as having knowledge or skill peculiar to the practices involved in the transaction, or (3) by his occupation holds himself out as having knowledge or skill peculiar to the goods involved in the transaction, or (4) employs an intermediary who by his occupation holds himself out as having such knowledge or skill, and that knowledge or skill may be attributed to the person whose status is in question.[52]

Contrary to significant evidence in the record, GRE-NA insists that it does not qualify as a "merchant" under the statute because it was only a sales representative, and not the seller or manufacturer of the goods at issue.[53]  At a minimum, the record

---

[50]     (...continued)
implied warranty claims.  *PPG Indus.*, 146 S.W.2d at 88 (downstream purchaser may bring implied warranty claim directly against remote manufacturer, even if there is no privity of contract between them; the warranty "pass[es] with the goods").

[51]     *See* TEX. BUS. & COM. CODE § 2.314(a).

[52]     *Nelson v. Union Equity Co-op. Exch.*, 548 S.W.2d 352, 355 (Tex. 1977) (citing TEX. BUS. & COM. CODE § 2.104(a)).

[53]     Motion, at 14 (citing Gruenenfelder Deposition (Exhibit C to Response), at 32 ("My position is that GRE North America, Inc. definitely did not sell the transformers")).

reveals a genuine fact issue as to two of the definitions of "merchant" recited above. The emails between GRE-NA and Nu Power, discussing detailed product specifications for the power supply units,[54] suggest that GRE-NA "by [its] occupation holds [itself] out as having knowledge or skill peculiar to the goods involved in the transaction," going to the third statutory criterion. Plaintiff's evidence also demonstrates a genuine fact issue on the first criterion that GRE-NA "deals in goods of the kind," here, power supply units. The case law holds that the term "deal" is interpreted according to its ordinary meaning, which is "to traffic; to transact business."[55] Plaintiff has presented evidence that GRE-NA regularly "dealt in" such goods.[56] GRE-NA argues that it does not qualify as a merchant "with respect to goods of that kind" because the goods at issue were "unique custom manufactured products, manufactured on a single run, according to specifications of a purchase order" and therefore "do not have 'goods of the kind' against which they may be compared for purposes of establishing merchantability under the code."[57] GRE-NA cites no authority supporting its exceedingly narrow definition of the "goods" at issue. The

---

[54]     *See*, *e.g.*, Exhibits G-1 & G-3 to Response.

[55]     *Nelson*, 548 S.W.2d at 355.

[56]     *See* Gruenenfelder Deposition (Exhibit C to Response), at 81-83 (GRE-NA facilitated the sale from GRE Hong Kong to Nu Power of a "large number of products," which Gruenenfelder himself described as "power supplies" or "power supply accessories").

[57]     Motion, at 14.

Court agrees with Plaintiff that "goods of the kind" include power supply units and the items in issue.

Summary judgment on Plaintiff's claim for breach of implied warranty of merchantability is denied.

**Implied warranty of fitness.**   The Texas statute providing for an implied warranty of fitness states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose. [58]

GRE-NA makes an argument similar to that above, namely, GRE-NA contends that it does not qualify as a "seller" under Section 2.315 because, while it "facilitated the sale of the power units from [GRE Hong Kong] to Nu Power," GRE-NA was not the seller or manufacturer of the goods at issue.[59]   For reasons stated above, Plaintiff has demonstrated a genuine issue of material fact as to whether GRE-NA was the manufacturer,[60] and summary judgment therefore is inappropriate.

GRE-NA also argues that it is not liable under Section 2.315 because it did not

---

[58]   TEX. BUS. & COM. CODE § 2.315.

[59]   Motion, at 15.

[60]   *See*, *e.g.*, Gruenenfelder Expert Report, at 1; Email from R. Araujo (Nu Power) to T. Hall (GRE-NA), dated Nov. 2, 2004 (Exhibit G-3 to Response).

"know or have reason to know of the particular purpose for which the goods [were] to be used" and that the buyer did not "rel[y] on the seller's skill and judgment to select or furnish suitable goods."[61]  GRE-NA maintains that, because it had no direct communication with Plaintiff US LED, it could not possibly have known US LED's purpose for the goods.   In the circumstances presented, the lack of direct communication between GRE-NA and US LED is not dispositive.  There is evidence that US LED, which does not make its own power supplies, "deferred to and relied upon Nu Power and Nu Power's suppliers and manufacturers for their expertise and skill in choosing the proper component parts of the transformers,"[62] and communicated its needs to Nu Power before making the purchase.[63]  Circumstantial evidence in the record also demonstrates that Nu Power transmitted to GRE-NA information about the particular needs for the units in question.   Gruenenfelder testified at deposition that he was involved in initial discussions with Nu Power about

---

[61]     Motion, at 16 (citing *Gorbett Bros. Steel Co., Inc. v. Anderson, Clayton & Co.*, 533 S.W.2d 413 (Tex. Civ. App. – Houston [1st Dist.] 1976, no writ)).

[62]     Farmer Affidavit, at 2, ¶ 4.

[63]     *Id*. at 1, ¶ 3 ("Before US LED ordered the transformers, Nu Power made specific representations to US LED, both verbally and in writing, regarding the fact that the transformers would function properly, were well-made, had a low failure rate, and could withstand the temperatures [sic] ranges in which they would be utilized").

Nu Power's requirements for the units' design.[64] Rick Araujo of Nu Power also testified that Nu Power provided product specifications to "Golden Regent Electronics," which then created a design based on Nu Power's specifications.[65]

Accordingly, summary judgment on Plaintiff's implied warranty theories is denied.

### 3. Negligence

Other than its general contention that GRE-NA is not vicariously liable for negligence, GRE-NA's Motion and Reply brief make no argument about Plaintiff's negligence theory, cite no authority regarding the claim, and provide no analysis of the claim's elements.[66] GRE-NA as movant thus fails to satisfy its summary judgment burden.

Summary judgment is denied on US LED's claim that GRE-NA is directly liable for negligence.

### C.   Defendant's Motion to Strike

Defendant GRE-NA has filed a Motion to Strike Plaintiff's Surreply on the

---

[64]   Gruenenfelder Deposition (Exhibit C to Response), at 83-84.

[65]   Araujo Deposition (Exhibit B to Response), at 40-41.

[66]   GRE-NA's Reply does argue that US LED cannot prevail on its claims for negligence and breach of express and implied warranties because "Plaintiff has failed to adduce any evidence that the units were defective, as required by Texas law." Reply, at 5. As stated previously, Plaintiff has demonstrated a genuine fact question as to whether the products were defective.

grounds that Plaintiff did not seek leave to file the surreply.[67]  Because the Court does

not rely upon the arguments in or newly submitted exhibits with the Surreply, this

motion is denied as moot.

GRE-NA's alternative request for leave to file a sur-response is also denied.

GRE-NA fails to identify any issue that warrants additional briefing, and the Court

perceives none.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant GRE-NA's Motion for Summary Judgment [Doc.

# 61] is **GRANTED in part** and **DENIED in part**.  Summary judgment is granted

in favor of GRE-NA as to Counts 1, 4, 5, 6, 7, and 8 from the Fifth Amended

Complaint, which allege only vicarious liability.  As to Counts 2, 3, and 9, which

allege both vicarious and direct liability against GRE-NA, GRE-NA's request for

summary judgment is granted as to the claims of vicarious liability, but denied as to

direct liability theories.  Plaintiff may therefore proceed with its direct liability

theories against GRE-NA for breach of express warranty, breach of implied warranty,

and negligence.  It is further

---

[67]    Defendant GRE North America, Inc's Motion to Strike Plaintiff's Surreply to
Defendant GRE North America's Motion for Summary Judgment and Brief in
Support Thereof and, in the Alternative, Motion [for] Leave to File Surresponse [Doc.
# 67].

**ORDERED** that Defendant GRE-NA's Motion to Strike Plaintiff's Surreply to Defendant' GRE-NA's Motion for Summary Judgment and Brief in Support Thereof and, in the Alternative Motion [for] Leave to File Surresponse [Doc. # 67] is **DENIED as moot.**

SIGNED at Houston, Texas, this **22nd** day of **September, 2008**.

_____
Nancy F. Atlas
United States District Judge