**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

US LED, Ltd.,                          §
           Plaintiff,               §
                                     §
v.                                     §          CIVIL ACTION NO. H-07-0783
                                     §
NU POWER ASSOCIATES, INC.,             §
RSI POWER, INC., and GRE NORTH         §
AMERICA, INC.                          §
           Defendants.              §

## MEMORANDUM AND ORDER

In this products liability case, Defendant RSI Power, Inc. ("RSI"), has filed a

Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, RSI'S Motion

for Summary Judgment [Doc. # 69] ("Motion").  Plaintiff US LED has responded to

both motions,[1] RSI has replied,[2] and US LED filed a surreply with an alternate motion

to enlarge time.[3]   Having considered the parties' briefing, the applicable legal

authorities, and all matters of record, the Court concludes that RSI's Motion to

---

[1]     Plaintiff's Response to RSI Power, Inc.'s Motion to Dismiss [Doc. # 75]
("Response"); Plaintiff's Response to Defendant RSI Power, Inc.'s Motion for
Summary Judgment [Doc. # 74] ("Summary Judgment Response").

[2]     RSI's Reply to Plaintiff's Response to RSI's Motion to Dismiss [Doc. # 78]
("Reply"); RSI's Reply to Plaintiff's Response to RSI's Motion for Summary
Judgment [Doc. # 79] ("Summary Judgment Reply").

[3]     Plaintiff's Surreply to Defendant RSI Power, Inc.'s Reply to Response to Motion for
Summary Judgment and in the Alternative, Motion to Enlarge Time [Doc. # 80].

Dismiss should be **granted** and RSI's alternate Motion for Summary Judgment should be **denied as moot**.

## I.   <u>BACKGROUND</u>

The general background in this case is set forth in the Court's previous Memorandum and Order [Doc. # 81]. In short, Plaintiff US LED, which purchased 5,000 power supply units from Defendant Nu Power, brought this product liability suit alleging that the units had a significant failure rate.  Defendant RSI, who has filed the instant motion, received the subject power supply units at its warehouse and, at the instruction of Defendant Nu Power, shipped them to US LED in Texas.  US LED brings eight claims against RSI, all under vicarious liability or joint enterprise theories: breach of contract, breach of express warranty, breach of implied warranties, wrongful acts under the DTPA, fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation, and negligence.[4]

RSI is incorporated in Nevada, and has its primary place of business in Nevada.[5]  Charles Plotts, RSI's President and 100 % owner, has executed an affidavit stating that RSI conducts no business activities in Texas, does not maintain an office or have employees in Texas, is not registered to do business in Texas, does not pay

---

[4]      Plaintiff's Fifth Amended Complaint [Doc. # 43].

[5]      Affidavit of Charles Plotts (Exhibit A to Motion) ("Plotts Affidavit"), at first unnumbered page, ¶ 3.

any taxes in Texas, does not have a bank account in Texas, owns no personal or real property in Texas, and does not advertise or solicit business in Texas.[6]

US LED argues that this Court's exercise of jurisdiction over RSI is proper because of RSI's contacts with Texas.  In support, US LED cites to RSI's actions in the instant case, shipping Nu Power's product to US LED in Houston.  RSI admits that it shipped the subject power supply units to Texas,[7] stating that it received the goods from the manufacturer into its Nevada warehouse, and then, at the oral instruction of Nu Power, shipped the units directly to US LED in Texas:

> The arrangement between Nu Power and US LED did not involve RSI at all, except that power supplies were shipped to the RSI's warehouse by manufacturer GRE Hong Kong and then the power supplies were shipped to US LED or its customers by contract employees of RSI as per oral instructions provided by Rick Araujo of Nu Power.[8]

US LED also argues that RSI had shipped product to Texas in the past, but cites to

---

[6]     *Id*. at first and second unnumbered pages, ¶¶ 4-9.

[7]     RSI's Objections and Responses to Plaintiff's First Requests for Admissions (Exhibit F to Response), at 3 (RSI admits that it "sent a certain number of transformers to US LED and/or its customers from its warehouse in Las Vegas, but RSI does not have any documentation or information concerning the number of transformers sent to US LED and its customers").  In the same document, RSI states that its documentation of the shipment to US LED is missing because its computers crashed.  *See id*. at 4.

[8]     Plotts Affidavit, at fourth unnumbered page, ¶ 18.  *See id*. ("RSI did not have any involvement in the contract between Nu Power and US LED.  RSI did not have any responsibility to insure power supplies provided by Nu Power were in good order and condition.")

only one occasion, which was the RSI's shipment of one sample unit to US LED on March 31, 2004.[9]

US LED also urges the Court to impute Nu Power's Texas contacts to RSI for jurisdictional purposes.  Although Plotts states that RSI is "a distributor of power supplies," and that RSI has contracts to distribute power supplies from Nu Power and from two other companies, MeanWell and Cosel,[10] US LED argues that "RSI's relationship with Nu Power goes well beyond that of a distributor."[11]

## II.   <u>WAIVER OF JURISDICTIONAL DEFENSE</u>

Plaintiff US LED first argues that RSI waived the defense of personal jurisdiction by failing to pursue it.  US LED added RSI as a defendant in its Fourth Amended Complaint on October 22, 2007.[12]  RSI's Answer, which raised the defense of personal jurisdiction and requested dismissal pursuant to Rule 12(b)(2), was filed on April 16, 2008.[13]  On August 8, 2008, RSI timely filed the instant motion, seeking

---

[9]     Response, at 3 (citing Invoice (Exhibit E to Response) (invoice from RSI Power, billed to US LED in Houston, for shipment of one unit)).

[10]    Plotts Affidavit, at second unnumbered page, ¶ 11.

[11]    Response, at 2.  This argument and the facts supporting it are discussed in Section III.C, *infra.*

[12]    Fourth Amended Complaint [Doc. # 24].

[13]    Defendant RSI Power, Inc.'s Original Answer [Doc. # 54].  On December 21, 2007, nearly two months after the Fourth Amended Complaint was filed, RSI's President (continued...)

dismissal for lack of personal jurisdiction.

US LED argues that RSI failed to pursue its jurisdictional defense because, after filing its answer in which the defense was raised, RSI litigated this case for four months before filing its motion to dismiss.  US LED points out several occasions when RSI could have reiterated its jurisdictional defense but did not: RSI's initial disclosures;[14] RSI's certificate of interested parties;[15] the deposition of Doug Gruenenfelder of GRE North America, at which counsel for RSI made an appearance and reserved questions for trial;[16] the Court's discovery conference on June 2, 2008,

---

[13]   (...continued)
execute a Waiver of Service, agreeing to serve an answer or motion upon Plaintiff by February 17, 2008.  Waiver of Service [Doc. # 37].  On March 19, 2008, because RSI had not yet filed an answer, US LED filed a request for entry of default judgment against RSI, *see* Plaintiff's Request for Entry of Default and Default Judgment [Doc. # 51], which the Court ordered served upon RSI.  Order to Serve Motion for Default [Doc. # 52].  Soon thereafter, RSI filed its Original Answer.

[14]   Defendant RSI Power, Inc.'s Rule 26 Initial Disclosures, filed May 14, 2008 [Doc. # 59].

[15]   Amended Certificate of Interested Parties, filed May 14, 2008 [Doc. # 60].

[16]   Deposition of Douglas Gruenenfelder, May 7, 2008 (Exhibit G to Response), at 2, 228.  RSI maintains in its Reply that it was not provided notice of Gruenenfelder's deposition, but learned on the morning of the deposition that the deposition was to take place and that Gruenenfelder had traveled from North Carolina to be available.  RSI states that its counsel agreed to attend the deposition "as a courtesy to the other attorneys based on the representation that Gruenenfelder's deposition would not related to RSI."  Reply, at 8 n. 9.

at which RSI appeared;[17] RSI's interrogatory responses;[18] and the deposition of RSI's President, Charles Plotts, in Houston.[19]

Based on these facts, Plaintiff argues that RSI has actively litigated this case, that its motion to dismiss could have been filed earlier, and that the motion's timing "sandbags" Plaintiff and prejudices Plaintiff's trial preparation.[20]  RSI replies that any delay was reasonable and in accordance with this Court's instructions.[21]

Rule 12(h)(1)(B) of the Federal Rules of Civil Procedure covers waiver of certain defenses under Rule 12(b), including the defense under Rule 12(b)(2) of lack of personal jurisdiction.  Rule 12(h)(1)(B) provides:

A party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to

---

[17]    Transcript of Discovery Hearing, June 2, 2008 (Exhibit H to Response), at 20-21, 28. As Plaintiff points out, RSI announced its intention to file a motion for summary judgment, and discussed the legal theories of joint enterprise and piercing the corporate veil, but did not argue or mention its jurisdictional defense.  *See id.*

[18]    RSI's Objections and Answers to Plaintiff's First Set of Interrogatories (Exhibit I to Response).

[19]    Deposition of Charles Plotts (Exhibit D to Response).

[20]    Response, at 6.

[21]    Reply, at 10 ("[T]he facts clearly demonstrate that there was no delay by RSI except the delay required in responding to US LED's written discovery and in presenting RSI's representative for deposition.  Furthermore, RSI had to wait to file its Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Motion for Summary Judgment until Plaintiff's attorney obtained written discovery from RSI and obtained the oral deposition of RSI's representative in accordance with directions and deadlines set by this Court.").

either (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . .[22]

RSI has clearly satisfied the requirements of the rule, having raised the defense in both its answer and its motion to dismiss, which is timely under the Court's scheduling order and motions deadline.[23]

Nevertheless, under the case law, some defendants have been found to have waived the jurisdictional defense, despite nominally preserving it in an answer, if the defendant substantially participates in the litigation without actively pursuing the defense.[24]   Although the waiver issue turns on the particular circumstances of each case, the case law generally focuses on two main areas of inquiry: (a) the amount of time that elapsed between service of process and the filing of the defendant's motion under Rule 12(b)(2), and (b) whether defendant's active litigation of the case amounts

---

[22]   FED. R. CIV. P. 12(h)(1)(B).

[23]   Hearing Minutes and Order, June 2, 2008 [Doc. # 63] (amending scheduling order and setting RSI's motions deadline for August 8, 2008).  The instant motion to dismiss was filed on August 8, 2008.

[24]   *See Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc*., 104 F. App'x 376, 379-80 (5th Cir. 2004) (noting holdings by other circuits that "a defendant may waive a properly-pleaded personal jurisdiction defense by failing to pursue the defense after including it in an answer"); *PaineWebber Inc. v. Chase Manhattan Private Bk. (Switzerland)*, 260 F.3d 453, 459 (5th Cir. 2001) (acknowledging "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections"); *Matthews v. Brookstone Stores, Inc*., 431 F. Supp. 2d 1219, 1223 & nn. 3-4 (S.D. Ala. 2006) (Steele, J.) (collecting cases).

to implicit consent to the court's jurisdiction.[25]

Based on a careful review of the case law and the procedural history of this suit, the Court finds that RSI did not waive its jurisdictional defense. The four months that elapsed between RSI's answer and its motion to dismiss were reasonable. Indeed, the Court agrees with various other courts that have held that longer periods were insufficient to show waiver.[26]

Moreover, the Court holds that RSI has not "actively litigated" the case in a manner that implicitly concedes jurisdiction. RSI's filing or service of preliminary documents required under the rules, such as initial disclosures or certificates of interested parties, and counsel's appearance at one pretrial conference clearly are

---

[25]    *Matthews*, 431 F. Supp. 2d at 1224-25. *See Brokerwood*, 104 F. App'x at 380-81.

[26]    *See Brokerwood*, 104 F. App'x at 380 (reversing a district court's finding of waiver, and holding that defendant did not waive its jurisdictional defense when it filed its motion to dismiss seven months after filing its answer); *Matthews*, 431 F. Supp. 2d at 1225 (exhaustively analyzing cases from across the nation and concluding that a five-month delay between filing an answer and a motion to dismiss, although "not a trivial period of time to participate in litigation," was of "considerably shorter duration" than those in "the vast majority of case law . . . in which a waiver was found"); *Tate v. Waller*, No. 5:05cv166-DCB-JMR, 2007 WL 2688532, at *2-3 (S.D. Miss. Sept. 10, 2007) (Bramlette, J.) (in ruling on a motion for dismiss for improper service of process, court held that the defense was not waived by an eight-month delay between the defendant's filing of an amended answer and its motion to dismiss, despite the defendant's substantial participation in discovery). Plaintiff cites to *Schwartz v. M/V Gulf Supplier*, 116 F. Supp. 2d 831 (S.D. Tex. 2000) (Kent, J.), in which waiver was found. In *Schwartz*, however, the Court relied upon the fact that the motion to dismiss was filed "on the eve of trial" after a nine-month delay and "extensive pretrial activity," in violation of the spirit of Rule 12(h). *See id*. at 835 & n.1.

insufficient.  Similarly, responding to interrogatories and attending a key deposition in the case, presumably to avoid the need for wasteful, duplicative discovery, are not grounds for imposition of a waiver.  In contrast, in *Brokerwood*,[27] the district court found waiver based upon the defendant's "extensive[] participat[ion] in the litigation" between its answer and its motion to dismiss—in particular, defendant's participation in a scheduling conference and its filing of a motion to strike the jury demand, initial disclosures, interrogatories, requests for production, and a witness list.[28]  The Fifth Circuit reversed, noting—as in the case at bar—that the defendant had not filed counterclaims or sought adjudication on the merits, the case had been dormant during most of the seven months, and the motion to dismiss was made properly before the district court.[29]  Similarly, in *Matthews v. Brookstone*, the district court carefully reviewed the case law and held that the defendant's "largely passive" participation "rank[ed] far below the levels deemed to constitute a waiver."[30]  The *Matthews*

---

[27]   Although *Brokerwood* is an unreported decision, this Court adopts the Fifth Circuit's reasoning.

[28]   *Brokerwood Prods. Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, No. Civ. A 02-1152, 2003 WL 25736894, at * 2 (E.D. La. May 22, 2003), *aff'd in part, vacated in part, and remanded*, 104 F. App'x 376 (5th Cir. 2004).

[29]   *Brokerwood*, 104 F. App'x at 380-81.

[30]   *Matthews*, 431 F. Supp. 2d at 1226.  During the elapsed five months, the *Matthews* defendant had "filed only required documents (answer, corporate disclosure statement, initial disclosure, discovery responses)," filed a joint request to extend a
(continued...)

defendant's actions exceeded those of RSI in this case.

RSI's jurisdictional defense was clearly raised in its answer and, four months later, in a timely motion to dismiss.  RSI's actions do not violate the spirit of Rule 12(h), and do not demonstrate that RSI "has played fast and loose with the power of the federal court."[31]  The Court holds that RSI did not waive its jurisdictional defense by its limited participation in this lawsuit.

## III.   MINIMUM CONTACTS ANALYSIS

US LED relies on two theories to show that RSI's contacts with Texas establish specific personal jurisdiction.  First, US LED argues that RSI's own conduct in the events underlying this lawsuit is sufficient for the Court to exercise jurisdiction.  Second, US LED argues that Nu Power's contacts with Texas should be imputed to RSI to satisfy the minimum contacts requirement.

### A.   Rule 12(b)(2) Standard

Defendant RSI seeks dismissal for lack of personal jurisdiction pursuant to Rule

---

[30]      (...continued)
deadline, sought no substantive relief from the Court, propounded no discovery requests, and attended and participated in multiple depositions noticed by other parties but did not notice or take any depositions.  *Id.*

[31]      *See id.*

12(b)(2).[32]   Plaintiff bears the burden of establishing that RSI, a non-resident

defendant, has contacts with the forum state sufficient to invoke the jurisdiction of this

Court.[33]   When a court rules on a motion to dismiss for lack of personal jurisdiction

without holding an evidentiary hearing, the party asserting jurisdiction is required to

present facts sufficient to constitute a *prima facie* case of personal jurisdiction.[34]   The

*prima facie* showing may be established by the pleadings, depositions, affidavits, or

exhibits of record.[35]   A court must accept as true the plaintiff's uncontroverted

allegations and resolve any factual conflicts in favor of the plaintiff.[36]   The law,

however, does not require the court to credit conclusory allegations, even if

uncontroverted.[37]

　　As interpreted by the Supreme Court and Fifth Circuit, a court's exercise of

personal jurisdiction over a non-resident defendant comports with constitutional due

---

[32]   FED. R. CIV. P. 12(b)(2).

[33]   *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

[34]   *Freudensprung v. Offshore Technical Servs., Inc*., 379 F.3d 327, 342-43 (5th Cir. 2004); *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

[35]   *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

[36]   *Freudensprung*, 379 F.3d at 343; *Cent. Freight*, 322 F.3d at 380; *Alpine View Co.*, 205 F.3d at 214.

[37]   *Cent. Freight*, 322 F.3d at 380; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

process requirements when (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice."[38]  Both prongs must be satisfied in order for a court to exercise personal jurisdiction over the defendant.

The "minimum contacts" prong is further subdivided into contacts that suffice to confer "specific jurisdiction" and those that give rise to "general jurisdiction." When, as in this case, a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether "the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's contacts with the forum state."[39]

The fact that a Texas plaintiff suffered some harm in Texas is insufficient to

---

[38]     *Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)); *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999)).

[39]     *Freudensprung*, 379 F.3d at 343; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir. 1993) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). In cases in which general jurisdiction is asserted, the court must determine whether the defendant has engaged in "continuous and systematic contacts" with the forum state.  *Freudensprung*, 379 F.3d at 343.

establish specific jurisdiction in this forum.[40]   Rather, the focus of the specific

jurisdiction inquiry is on "the relationship between the defendant, the forum, and the

litigation."[41]  Contacts that are "random," "fortuitous," or "attenuated" do not satisfy

the minimum contacts requirement.[42]

If the plaintiff makes a *prima facie* showing of minimum contacts, then the

burden shifts to the defendant to show that the court's exercise of jurisdiction would

not comply with "fair play" and "substantial justice."[43]   In making a fundamental

fairness determination, a court must examine: (1) the burden on the defendant; (2) the

forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4)

the judicial system's interest in efficient resolution of controversies; and (5) the states'

shared interest in furthering fundamental social policies.[44]

## B.   RSI's Own Contacts with Texas

RSI argues that its shipment of power supplies to Plaintiff in Texas does not

---

[40]   *Revell v. Lidov*, 317 F.3d 467, 473 & n.41 (5th Cir. 2002); *Panda Brandywine*, 253 F.3d at 869-70.

[41]   *Freudensprung*, 379 F.3da t 343.

[42]   *Moncrief*, 481 F.3d at 312.

[43]   *Freudensprung*, 379 F.3d at 343.

[44]   *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008); *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)).

satisfy the requirement of acts "purposely directed" toward the state of Texas.[45]

Plaintiff maintains that RSI shipped products to Plaintiff "at least twice"—once in the

order at issue here, and once when *one* power supply unit, a sample, was shipped to

Plaintiff in Texas.[46]  Plaintiff alleges that RSI knew, at the time it shipped the power

supply units from its warehouse, that the units were destined for Texas.[47]

The case law demonstrates that RSI's contacts with Texas, which resulted from

the fortuity of Plaintiff's residence, are insufficient to confer specific personal

jurisdiction upon this Court.[48]  Plaintiff's evidence shows that RSI made two—and

only two—shipments to Texas, at the behest of Nu Power.  Shipment of products into

---

[45]  As stated above, when determining specific jurisdiction, the court must determine (1) whether RSI "purposely directed" its activities toward Texas or "purposely availed" itself of the privileges of conducting activities in Texas and (2) whether the controversy at bar "arises out of" or is "related to" RSI's contacts with Texas.  *See Freudensprung*, 379 F.3d at 343.  The parties' arguments are focused exclusively on the first prong.

[46]  Response, at 9 (citing Plotts Affidavit, at fourth unnumbered page, ¶ 19).

[47]  *Id*. (citing Photograph of Transformer (Exhibit J to Response)).  Although Plaintiff argues that RSI knew the transformers were going to Texas because "US LED's logo and phone number were on each subject transformer," *id*., the photograph in Exhibit J does not support Plaintiff's argument.  First, Plaintiff has not established that the photographed transformer in Exhibit J is actually one of the units at issue in this case.  Second, although the transformer in the photograph does bear the US LED name, the only phone number visible is a number with an 866 area code—in other words, a nationwide, toll-free number.

[48]  *Burger King*, 471 U.S. at 475 (the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts").

the forum state, without more, does not satisfy the minimum contacts requirement.[49]

The Fifth Circuit has held that when a defendant's "contact with Texas rests on nothing but 'the mere fortuity that the plaintiff happens to be a resident of the forum,'" the court cannot infer "purposeful availment of the privilege of conducting activities within the forum state."[50]   In fact, even contracting with a Texas resident[51]—which is

---

[49]   *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) ("the shipment of articles to the forum state is insufficient to justify an exercise of in personam jurisdiction over the nonresident shipper").

[50]   *Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (quoting *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974)) ("minimum contacts" requirement was not satisfied by the defendant's telephone calls to plaintiff in Texas, its payments wired to Texas, and its contracts with two Texas entities). Multiple Fifth Circuit opinions apply this same rule. *See Moncrief*, 481 F.3d at 312 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)) ("[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law" because, were it otherwise, "jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state"); *Freudensprung*, 379 F.3d at 344 ("this Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient" to establish minimum contacts); *C & H Transp. Co. v. Jensen & Reynolds Construction Co.*, 719 F.2d 1267 (5th Cir. 1983) (rejecting plaintiff's argument that "minimum contacts" requirement was satisfied by a telephone call to the forum state, the movement of goods through the forum, and payment mailed to the forum); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (rejecting argument that "minimum contacts" requirement was satisfied by extensive communication between the Alaska defendant and the Texas plaintiff, travel by officers of the Alaska defendant to Texas to "close" the deal, a contract between the parties, and the defendant's act of mailing payment to Texas).

[51]   US LED is incorporated under the laws of the State of Texas.  Fifth Amended Complaint [Doc. # 43], at 1, ¶ 1.  Its corporate office is located in Houston.

more than RSI has been shown to have done—does not establish minimum contacts:

> We stress that [the defendant's] contract with the Texas plaintiffs does not alone establish the sufficient minimum contacts with Texas. Instead we look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the defendant] purposefully established minimum contacts with the forum.[52]

Plaintiff has made no showing that its location in Texas was somehow "strategically advantageous" to RSI, so as to suggest that RSI purposefully availed itself of the Texas market.[53]

Plaintiff argues that the minimum contacts requirement is satisfied here by RSI's single act of placing a product into the stream of commerce with knowledge that it would reach Texas.[54]   However, the relevant case law, including Plaintiff's cited authorities, discusses a defendant's act of placing *its own product* in the stream of

---

[52]   *Stuart*, 772 F.2d at 1193.  *See Freudensprung*, 379 F.3d at 344; *Hydrokinetics*, 700 F.2d at 1029.

[53]   *See Moncrief*, 481 F.3d at 313 (court lacked personal jurisdiction over the defendant; court noted that, given the nature of the work specified by the parties' contract, the plaintiff's Texas location was "irrelevant," and contrasted cases in which a plaintiff's location in the forum state was "strategically advantageous to the defendant and was the basis for the agreement," so as to suggest that "the defendant had purposefully availed itself of doing business in Texas").

[54]   Response, at 8.  *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297-98 (1980) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State").

commerce, and not merely shipping another's product at the behest of a third party.[55] There is no showing in this case of an attempt by RSI to avail itself of the Texas market, as in the product liability cases cited by Plaintiff; rather, RSI's actions are more fairly characterized as an "isolated occurrence."[56]

Plaintiff also apparently relies on RSI's attempts to attract customers throughout the United States and the world, as evidenced by its website which "states that RSI can ship anywhere in the world," its toll-free number "encouraging calls throughout the nation," and RSI's representatives in California and Florida to solicit business on the West and East coasts.[57] However, RSI's attempts at nationwide marketing do not provide evidence relevant to the Court's focus when determining the issue at bar, namely, whether RSI "purposefully directed" its activities toward Texas in

---

[55] *Luv N' Care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 470-72 (5th Cir. 2006) (Colorado entity which held a patent on a baby bottle had "purposefully availed" itself of the benefit of the market in the forum state of Louisiana, although Wal-Mart, and not the Colorado entity, had control over the ultimate destination of its goods; it was "eminently foreseeable" that the company's products would reach Louisiana); *Ruston*, 9 F.3d at 420-21 (Minnesota manufacturer of gas-turbine engine system had intentionally placed its product into the stream of commerce, knowing as a fact that the products would be delivered to Texas).

[56] *See World Wide Volkswagen*, 444 U.S. at 297 (if a sale "is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others").

[57] Response, at 9 (citing Plotts Affidavit, at second unnumbered page, ¶ 11; Plotts Deposition, at 41-42).

particular.[58]

Plaintiff has not demonstrated that RSI "purposefully availed" itself of the Texas forum.  RSI's contacts are insufficient to confer specific personal jurisdiction upon the Court.

### C.      Imputing Nu Power's Texas Contacts to RSI

Plaintiff argues that, because it pled theories of alter ego and joint enterprise regarding Nu Power and RSI, Nu Power's contacts with Texas are imputed to RSI for purposes of determining personal jurisdiction.[59]  Plaintiff maintains that Nu Power is registered to conduct business in Texas, and that the two companies are sufficiently intermingled to impute Nu Power's contacts to RSI.  RSI contests US LED's argument that the two corporations operated for mutual benefit.  RSI's President states:

> RSI and Nu Power are separate corporations, and RSI and Nu Power
> have separate business interests. . . . Of course, RSI is interested in Nu
> Power developing more types of power supplies, and this will increase
> the inventory of power supplies available to RSI for RSI to sell to RSI's
> customers.  RSI is also interested in Nu Power's success on the basis of
> RSI's stock ownership as Nu Power's success will increase the value of

---

[58]    *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (when defendant "merely establishes a passive website that does nothing more than advertise on the Internet," personal jurisdiction is not appropriate merely because the website is accessible by residents of the forum state).

[59]    Response, at 10 (citing *Freudensprung*, 379 F.3d at 346).  Plaintiff further argues that, when determining jurisdictional questions, the alter ego test is less stringent than when determining liability.  *Id.* (citing *Stuart*, 772 F.2d at 1198 n.12).

RSI's stock in Nu Power.[60]

Plaintiff's argument relies on *Freudensprung v. Offshore Technical Services, Inc.*, which, contrary to Plaintiff's contention, does not hold that merely pleading an alter ego theory allows Nu Power's contacts to be imputed to RSI. Rather, *Freudensprung* requires "clear evidence" of alter ego status before imputing personal juridiction contacts of one entity to another:

> As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated. This principle, however, is not inviolate. Rather, the presumption of institutional independence of related corporate entities may be rebutted by *clear evidence*, which requires a showing of something beyond the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident. Accordingly, *our cases generally demand proof of control by one corporation over the internal business operations and affairs of another corporation to make the other its agent or alter ego, and hence fuse the two together for jurisdictional purposes*.[61]

*Freudensprung*, which involved two corporations that allegedly were parent and subsidiary, goes on to list five non-exhaustive factors for determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness: (1) the amount of stock owned by the parent of the subsidiary; (2)

---

[60]    Plotts Affidavit, at fourth unnumbered page, ¶ 21.

[61]    *Freudensprung*, 379 F.3d at 346 (emphasis added) (internal citations, quotation marks, and alterations omitted).

whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent corporation exercises complete control over the subsidiary's general policies or daily activities.[62]

Plaintiff's evidence, which relies almost exclusively on Plotts' deposition testimony, falls far short of satisfying these five factors. US LED presents evidence that RSI owns an unspecified amount of stock in Nu Power;[63] that RSI previously provided office space, office services, and warehouse space to Nu Power;[64] that Nu Power listed RSI's website on its letterhead;[65] that RSI and Nu Power share

---

[62]    *Id.* (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)).

[63]    Plotts Deposition (Exhibit D to Response), at 116 (Plotts testified that RSI owns stock in Nu Power but that he could not recall how much).

[64]    RSI provided Rick Araujo of Nu Power with office space in RSI's building, although Plotts' deposition testimony is not specific about when, saying only "after 2000." Plotts Deposition, at 63. Nu Power did not pay rent for the office space, and used RSI's copiers and fax machines. *Id.* at 67. Plotts testified that Araujo used RSI's phone number, and that RSI employees answered the phone. *Id.* at 64. At the time of deposition (July 22, 2008), RSI was providing warehouse space to Nu Power, although the deposition does not clarify whether Nu Power was paying rent for the space. *Id.* at 65. Plaintiff's counsel stated at Plotts' deposition that Josh Juarez, a contract employee of RSI, is listed with the State of Nevada as the registered agent for service of process for Nu Power, but Plotts did not confirm that fact, and the relevant exhibit to the deposition was not provided to this Court. *See id.* at 71-72 (discussing Exhibit 5 to the deposition).

[65]    *Id.* at 95-96.

employees;[66] and that Rick Araujo "schooled" RSI employees about how to set up Nu

Power's power supplies, but no other suppliers had provided such schooling or

training to RSI.[67]  However, Plaintiff presents no evidence going to *Freudensprung*'s

criterion that Nu Power exercised meaningful, much less "complete," control over

RSI's daily activities.[68]  Also, significantly, Plaintiff presents no evidence that the

companies shared an accounting system or that corporate formalities were

disregarded.[69]

   Plaintiff's evidence fails to overcome the presumption that RSI and Nu Power

are separate corporate entities.  Indeed, the Fifth Circuit cases cited by Plaintiff do not

support Plaintiff's arguments.  The cases that considered evidence comparable to

Plaintiff's here concluded that this type of proof of an alter ego relationship was

insufficient.[70]

---

[66]   Araujo Deposition (Exhibit A to Response), at 211.  US LED explains, Response at
2 n.1, that RSI claims to have no employees, and that US LED refers to RSI's
independent contractors as "employees."

[67]   Plotts Deposition, at 84-85, 89.

[68]   *See Freudensprung*, 379 F.3d at 346.

[69]   *See id*.

[70]   *See Freudensprung*, 379 F.3d at 346-47 (Plaintiff's evidence, consisting mainly of
SEC filings that refer collectively to all of the entities in question as "The Company,"
is insufficient to overcome the presumption of corporate separateness; at most, the
evidence "might arguably establish the existence of some corporate relationship"
between the entities);  *Stuart*, 772 F.2d at 1198 (Plaintiff's evidence in support of its
(continued...)

Additionally, even if Plaintiff were successfully to establish that RSI was engaged in a joint enterprise with Nu Power, such a showing would not provide the Court with personal jurisdiction over RSI.  The Court agrees with the reasoning in *Thomas v. Lazard Freres*;  the exercise of specific jurisdiction is not proper under a joint enterprise theory because such a holding would "impermissibly confuse the concepts of liability and personal jurisdiction."[71]  Rather, "'the requirement of minimum contacts must be met as to *each* defendant.'"[72]

---

[70]    (...continued)
argument that a corporation was merely a facade for the individual defendant consisted of advertisements that did not clearly distinguish between the two, individual use of corporate letterhead and checks, and allegations that the individual benefitted from the corporation's contacts with Texas; the evidence showed a "blurring of the distinction" between the actions of the individual and that of the corporation, but did not demonstrate that the corporation was a facade for the individual's interests and activities sufficient to impute jurisdictional contacts).   In a third case cited by Plaintiff, the Fifth Circuit affirmed the district court's holding that the totality of evidence demonstrated an alter ego relationship sufficient to establish personal jurisdiction.  *United States v. Jon-T Chems., Inc*., 768 F2d 686 (5th Cir. 1985).  However, the *Jon-T Chems.* court relied upon multiple factors not present in the case at bar, such as evidence that the subsidiary was wholly owned by the parent; that the subsidiary and parent had all of the same directors and officers; that the parent paid many of the subsidiary's bills and expenses, and made substantial loans to the subsidiary without collateral, interest, or corporate authorization; and that the parent and the subsidiary filed consolidated financial statements and tax returns. *Id*. at 695.

[71]    *Thomas v. Lazard Freres & Co., LLC*, No. 3-01-CV-2160-R, 2002 WL 1461915 (N.D. Tex. July 1, 2002) (Buchmeyer, J.), at *3.

[72]    *Id*. (citations omitted) (emphasis original).  *See Stutzman v. Rainbow Yacht Adventures Ltd.*, 2007 WL 415355 (N.D. Tex. Feb. 7, 2007) (Kinkeade, J.), at *7 ("Personal jurisdiction cannot be based upon contacts by another member of a joint
(continued...)

Plaintiff has not demonstrated "something beyond the mere existence of a corporate relationship" between Nu Power and RSI.[73]  The evidence is insufficient to warrant the exercise of jurisdiction over RSI.  Nu Power's contacts with Texas may not be imputed to RSI for jurisdictional purposes.

### D.    Fair Play and Substantial Justice

Both prongs of the test for specific personal jurisdiction must be satisfied before the Court may exercise jurisdiction over a non-resident defendant.[74]  Given the holding above that RSI does not have sufficient contacts with Texas, the Court need not address the second prong of the personal jurisdiction test, namely, the requirement that the Court's exercise of jurisdiction comport with fair play and substantial justice.

## IV.    CONCLUSION

Because RSI has not been shown to have purposefully availed itself of the benefits and protections of the State of Texas, the Court lacks personal jurisdiction over RSI and it should be dismissed from this action.  It is therefore

**ORDERED** that RSI's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 67] is **GRANTED**.  RSI is **DISMISSED** from this action.  It is further

---

[72]    (...continued)
enterprise").

[73]    *See Freudensprung*, 379 F.3d at 346.

[74]    *See*, *e.g.*, *Panda Brandywine*, 253 F.3d at 870.

**ORDERED** that RSI's Motion for Summary Judgment [Doc. # 67] is **DENIED as moot**.  It is further

**ORDERED** that US LED's Motion to Enlarge Time [Doc. # 80] is **DENIED as moot**.

SIGNED at Houston, Texas, this **5ᵗʰ** day of **November, 2008**.

Nancy F. Atlas
United States District Judge